783 So.2d 1227 (2001)
CHATEAU COMMUNITIES, INC., etc., Appellant,
v.
Paul G. LUDTKE, and Nancy J. Shisler, et al., Appellees.
No. 5D00-1604.
District Court of Appeal of Florida, Fifth District.
May 11, 2001.
David D. Eastman and J. Allen Bobo, of Lutz, Webb, Bobo & Eastman, Tallahassee, for Appellant.
*1228 Shannon McLin Carlyle, of Shannon McLin Carlyle, P.A., Leesburg, Eric H. Faddis, of Faddis, Oldham & Smith, P.A., and Michael Maher, of Maher, Gibson & Guiley, P.A., Orlando, for Appellees.
GRIFFIN, J.
This is the appeal of an order granting class certification. Although appellees may have claims suitable for a class action, as pleaded they are unsuitable. Accordingly, we reverse.
Appellant Chateau Communities, Inc. ["Chateau"] is the owner of a mobile home park called the Lakes of Leesburg. Appellees[1] are four tenants in the park. They lease land from Chateau, but own their own mobile homes. Appellees brought this action against Chateau on behalf of approximately 640 homeowners residing at the Lakes of Leesburg. The complaint is based on appellees' payment of a "special assessment" for fire and rescue services which had been imposed by Lake County. Lake County originally had attempted to bill appellees (and other mobile home owners) directly for the "special assessment"[2] pursuant to Lake County Ordinance 1990-24; however, after concluding that the enabling legislation authorized the imposition of these assessments only on real property, Lake County in 1991 began levying the assessment against the owners of real property. See Lake County Ordinance/Resolution 1991-114. Chateau was billed for the assessment under the new ordinance. Chateau, in turn, billed the mobile home owners to recover this sum based on Chateau's prospectus and the parties' rental agreement, both of which provided that special assessments must be paid by the tenant as an aspect of rent.[3]
The complaint asserts that Chateau informed the mobile home owners that the mobile homeowners had been billed for the assessment by the county and were responsible for its payment, but Chateau would collect the assessment on behalf of the county.[4] Appellees were told they would be evicted if the assessment was not paid. They allege that the "collection agent" misrepresentation was intended to induce appellees to forego their "rights and remedies" under Chapter 723, Florida Statutes. The complaint alleges that, due to Chateau's misrepresentation, appellees *1229 paid the assessment from 1991 to the present, although this was not a valid "pass through" fee and had been collected in violation of chapter 723, Florida Statutes. Appellees' complaint contained three separately pleaded counts entitled "Unjust Enrichment", "Fraudulent Misrepresentation", and "Civil Theft".
Chateau moved to dismiss the complaint on numerous grounds, including that the claims were inappropriate for class treatment. After the court denied the motion, Chateau answered the complaint and asserted several affirmative defenses.
Appellees then moved to certify their class, which the complaint defined to include all mobile home owners of the Lakes of Leesburg who had been notified by Chateau that it would be acting as the county's collection agent and who had, in fact, paid the assessment to Chateau. Appellees asserted that they met the requirement of numerosity, since the class consisted of approximately 640 mobile home owners. They contended the claims they were asserting and those of the class met the requirements of "commonality" and "typicality", since they were all based on payment of the fire assessment under the same circumstances. Appellees further alleged that they could fairly and adequately protect and represent the interests of each member of the class.
A hearing was held on appellee's motion on April 3, 2000 and the four named plaintiffs testified. Nancy Shisler ["Shisler"] testified that she paid her first fire assessment in 1995 and has received notices regarding payment of the fire assessment every year since. Shisler thought that payment of this assessment was required by the prospectus and her rental agreement, both of which require her to pay "special assessments". She also knew she would be evicted if she did not pay the assessment. Shisler testified she now believes the assessments were illegal, and Chateau had no right to impose them, because the fire assessment is really a "non-ad valorem tax" which is not covered by the prospectus and rental agreement. Shisler testified she and Mr. Simister together purchased a second home at the Lakes of Leesburg in October 1997, and she now rents out the first. She knew from her prior experience, and the relevant documents, that she was obligated to pay the fire assessment for this property, and she or her live-in partner did in fact pay the assessment.
Joseph Simister, who referred to himself as Shisler's "significant other", said that he has paid a fire tax to Chateau since 1996. He believes the assessment is improper, since the prospectus does not require them to pay non-ad valorem taxes, and he feels the fire assessment is a non-ad valorem tax.
William F. Barnett ["Barnett"] testified that he has been a mobile home owner at the Lakes of Leesburg since July 1989. He has been paying the "fire tax" to Chateau since 1991. He received his first notice from Chateau regarding his obligation to pay the tax in 1992 and has received similar notices every year since. Barnett, who is eighty years old, believes the fire tax is unlawful. He acknowledged that the prospectus required them to pay "special assessments" and ad valorem property taxes. However, he does not believe that the fire tax, which is a "non-ad valorem tax", fits within either category.
Paul Ludtke ["Ludtke"] testified that he has been a resident of the park for ten years. He has received notices from Chateau since 1991. He thought payment of the "fire tax" was a legal obligation imposed *1230 on him by the county. He has since learned differently. Ludtke is former president of the Lake County Mobile Home Owners Association, which is an association of 141 parks. Ludtke asserts that because the Florida Supreme Court has ruled that the fire tax can be imposed only on real property, Chateau has no right to attempt to charge the fire tax back to the individual mobile home owners. He said that regardless of whether the charge is classified as a "non ad-valorem assessment" or an "ad valorem assessment", it is still an illegal tax on a renter, because it cannot be passed on.
The trial court found that appellees satisfied the requirements of Florida Rule of Civil Procedure 1.220, subsections (a) and (b), and certified the class.
The problem with this case lies in the way it is pleaded and we can only speculate about the reason for the pleading decision. The complaint initially sets forth the proposition that section 723.031, Florida Statutes (1999) will not permit a mobile home tenant to be charged a special assessment such as the "fire tax" which has been charged to and paid by the landlord. The complaint also sets forth that even if the assessment could be recovered from the tenant, the requirements of chapter 723 for notification were not met. Yet, the complaint contains no claim for violation of chapter 723 and there is some suggestion in the limited record we have that the remedies contained in chapter 723 have not been pursued. Instead, all three causes of action in this case are based on "misrepresentation" and are predicated on the exact same facts: (1) that appellant misrepresented its status as "collection agent" for the county and misrepresented that the tenants had a legal or a contractual obligation to reimburse Chateau for its payment of the "fire tax"; (2) that Chateau's intent in making these misrepresentations was to cause the mobile home owners to "relinquish" their chapter 723 rights and remedies to contest the validity of the tax; and (3) that the mobile home owners detrimentally relied on Chateau's misrepresentations, causing them to tender payment without utilizing the remedies available under chapter 723. Unstated in the complaint, but implied, is that if these Chapter 723 remedies had been invoked, appellees and the class would have been protected from paying the monies that they did pay but now claim they did not owe. Having elected to pursue this suit solely based on Chateau's misrepresentations and their detrimental reliance, however, appellees are confronted with a serious obstacle to class action status.
The general rule is that fraud claims cannot be brought as a class action because each such claim is factually distinct and requires proof of matters individual to each plaintiff, such as proof of reasonable reliance and damages. See Lance v. Wade, 457 So.2d 1008 (Fla.1984), Hoechst Celanese Corp. v. Fry, 753 So.2d 626 (Fla. 5th DCA) (en banc), review denied, 773 So.2d 55 (Fla.2000); Shoma Devel. Corp. v. Vazquez, 749 So.2d 1287 (Fla. 3d DCA 2000); Arvida/JMB Partners v. Council of Villages, Inc., 733 So.2d 1026 (Fla. 4th DCA 1998), review denied, 732 So.2d 325 (Fla.1999).[5] This seems especially true in a case such as this where the alleged fraud is based on a misrepresentation concerning what is required or permitted *1231 by law or by contract.[6] Whether this "fire tax" can be charged by Chateau as an aspect of the "lot rental amount", as a "pass through charge" or otherwise under chapter 723 is only the first hurdle under the pleadings. Each alleged victim will have to establish how or why Chateau's representation defrauded him or her. Given the nature of the fraud claims pleaded in this case (what the ordinance provided, what chapter 723 will allow, and, perhaps, what the rental agreement means) and the significant questions that arise concerning "reasonable" reliance on such misrepresentations, we conclude the rule of Lance v. Wade, 457 So.2d 1008, is both controlling and correct in this case.
The trial court concluded that a class action was appropriate because: "The claims essentially involve allegations that the defendant committed the same unlawful acts in the same method against the entire class". In saying this, the trial court may have looked beyond the claims actually pled. If this were a statutory cause of action or if it were pleaded in some other way, the trial court's view may have been correct. However, as pleaded, this case is only partly about what Chateau said or did; of equal importance is what the mobile home owners did (or did not do). There is no special relationship between these landlords and the tenants, pleaded or apparent, that would arguably eliminate reasonable reliance as an element of the pleaded claims. Assuming arguendo that appellees have a cause of action for Chateau's misrepresenting what the county ordinance provides, what Florida statutes will allow and what the rental agreement provision means, the effect of such misrepresentation(s), if any, on each claimant will have to be considered individually. Equally individual are each tenant's claim of coercion and available defenses such as voluntary payment.
REVERSED and REMANDED.
PETERSON and ORFINGER, R.B., JJ., concur.
NOTES
[1] The individual appellees are: Paul Ludtke, Nancy J. Shisler, Joseph F. Simister and William F. Barnett.
[2] The Florida Supreme Court appears to have already determined that the assessment in this case is a valid "special assessment". See Lake County v. Water Oak Management Corp., 695 So.2d 667 (Fla.1997). For the difference between special assessments and taxes, see City of Boca Raton v. State, 595 So.2d 25 (Fla.1992), opinion modified sub nom., Collier County v. State, 733 So.2d 1012 (Fla.1999).
[3] The prospectus stated that each homeowner would be required to pay his or her fair share of a number of charges, to include "taxes, special assessments and fees". "Taxes" was defined to mean "all general and special ad valorem taxes levied upon or assessed against the community owner". Id. The rental agreement required each mobile home owner to pay as "additional rent" his or her "(a) pro rata share of increases, if any, which occur during the primary term, or any renewal thereof, in real and personal property taxes and special assessments imposed against the land, improvements and personal property in the Community...."
[4] The notices stated in relevant part:

The Lake County Commission mandated in 1991 that [Chateau] act as [Lake County's] collection agent for the $35.00 Fire Tax formerly charged on your tangible property tax bill.
[5] Fraud claims also generally involve a choice of remedies, which make them inappropriate for class treatment. Osceola Groves v. Wiley, 78 So.2d 700 (Fla.1955).
[6] Because the trial court denied the appellant's motion to dismiss, we must assume for purposes of this appeal (but we do not decide) that the three pleaded claims state a cause of action and that the alleged misrepresentations are actionable under some set of facts. See Nicholson v. Ariko, 539 So.2d 1141 (Fla. 5th DCA), review denied, 548 So.2d 662 (Fla. 1989). Nor do we decide that ultimate facts to support each of the elements of fraud (or any other tort) have been sufficiently pleaded as required under Florida law.