RECKSIEDLER, J.J., Associate Judge.
The City of Orlando and Lasercraft, Inc., appeal a final judgment in favor of Michael Udowyehenko that invalidated the City’s red light camera ordinance as preempted by state law. This court affirms the lower court’s decision and certifies conflict with the decision made by the Third District Court of Appeal in City of Aventura v. Masone, 89 So.3d 233 (Fla. 3d DCA 2011) (motion for rehearing, motion for rehearing en banc, and request for certified question denied March 6, 2012).
On December 17, 2007, the City enacted its “Red Light Infractions” ordinance adopting Section 1, Article III of its city code and installed automatic cameras at specific intersections within city limits to photograph vehicles running red lights. According to the ordinance, if a vehicle is videotaped running a red light, an infraction is issued to the owner, wherein the owner is required to pay the fine for the infraction or file an appeal. If timely appealed, a hearing is set.
On May 23, 2009, Udowychenko’s vehicle was recorded running a red light at the intersection of Conroy and Vineland Roads in Orlando.[1] Upon a code enforcement officer viewing the video and confirming ownership of the vehicle, Udowyehenko was issued a notice of infraction pursuant to the ordinance. Udowyehenko appealed and attended a hearing before a hearing officer on August 20, 2009. Udowyehenko declined to offer any testimony at the hearing; a compliance officer testified to the violation. Udowyehenko moved to dismiss because the City failed to establish that the vehicle in the video was owned by him or under his care, custody, or control at the time of the infraction. The hearing officer denied Udowychenko’s motion, found Udowyehenko guilty of the offense, and ordered him to pay $155 ($125 fine and $30 administrative fee).
On August 31, 2009, Udowyehenko filed suit against the City and Lasercraft, the Georgia corporation that installed the red light system.[2] Udowychenko’s third amended complaint pursued claims for unjust enrichment, conversion, malicious prosecution/abuse of process, and injunc-tive and declaratory relief. Udowyehenko asserted that the City’s red light infraction program was an invalid exercise of municipal power because it purports to legislate in an area that has been preempted by chapter 316 of the Florida Uniform Traffic Control Law and chapter 318 of the Florida Uniform Disposition of Traffic Infractions Act.
The defendants filed an answer and alleged several affirmative defenses. Udow-ychenko and the defendants filed competing motions for summary judgment. A hearing on these motions was held on July 23, 2010. The trial court granted summary judgment in favor of Udowyehenko. The defendants appealed.
The City argued that the ordinance did not conflict with state law, but was a supplement to chapter 316, and expressly authorized by statute. Lasercraft argued the ordinance was not preempted by statute since there was no exclusive reservation of authority to the state and the Legislature had only recently enacted a statute (section 316.0076 as part of the Mark Wandall Traffic Safety Act) in or *592 der to expressly preempt the use of red light cameras to the state. Udowychenko argued that uniform traffic control has been preempted to the state and that the City’s ordinance conflicts with chapter 816 on several grounds. He further argued that the recent express preemption statute was a clarification in response to at least twenty-six municipalities with similar red light programs and the lawsuits challenging those programs.
The trial court concluded that while the goal of reducing red light running was laudable, the ordinance intrudes into an area preempted to the state and therefore is invalid. The trial court reasoned, “the Legislature has not authorized municipalities to enforce and adjudicate traffic law violations in a manner different from that provided in Florida Statutes, chapter 816. The ordinance does just that, and is therefore invalid.” The trial court also concluded that recent legislation expressly preempting the use of red light cameras to the state merely clarified what had always been the law. The trial court entered final judgment in Udowychenko’s favor for $131.00 plus interest.[3] This appeal by the City and Lasercraft follows.
The issue on appeal is whether the lower tribunal erred in finding the City’s red light ordinance invalid by declaring that it was preempted by state law and otherwise conflicted with state statutes. An order granting summary judgment is reviewed de novo. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law. Id. Questions of statutory application and preemption are also reviewed de novo. Marcy v. DaimlerChrysler Corp., 921 So.2d 781, 783 (Fla. 5th DCA 2006). We find the trial court did not err.
The City’s ordinance provides that a failure to stop at a red light is a civil, noncriminal infraction and authorizes the use of cameras to record images of motor vehicles running red lights as a means of enforcement. A code enforcement officer from the City reviews the recorded images from the cameras to determine the identification of the vehicle and the infraction, wherein a notice of infraction is sent to the registered owner of the vehicle. The notice includes the recorded images, the civil fine with the date by which it must be paid, and a warning that failure to pay the fine or to contest liability within thirty days will constitute a waiver and be considered an admission of liability.
An owner who files a notice of appeal must include a notarized statement explaining the grounds for appeal. If the infraction is not dismissed based upon the owner’s statement, the City schedules a hearing before a hearing officer, where the code enforcement officer who reviewed the recorded images must testify and the owner may testify. The recorded images are admissible and constitute prima facie evidence of the violation. Unless a police report has been filed, the registered owner is presumed to be responsible for the operation of the vehicle at the time of the red light infraction.
If the appeal is denied, the owner must pay the fine and costs, which is $125.00 for the first two violations and $250.00 for the third and any subsequent violation. Any owner who fails to appeal or is unsuccess *593 ful on appeal and then fails to pay the fine will be denied the right to obtain and maintain any city permits or licenses, including building permits and occupational licenses.
The City contends on appeal that according to section 816.008(l)(w), Florida Statutes, municipalities have been expressly granted the authority to regulate traffic on their roads so long as the regulation is not inconsistent with state law.[4] The City argues that its ordinance does not conflict with state law, specifically section 316.007; it simply “added an additional” .means of enforcing the requirement that drivers stop at red lights. The City acknowledges that state law provides an officer must observe the traffic violation and the driver is issued the citation while no law enforcement officer is required to be present, whereas under the City’s ordinance the owner is issued the notice of infraction by a code enforcement officer; the City also admitted there were different standards of proof under state law and the ordinance. The City maintains it has supplemented this state law by using cameras to detect red light runners and to subject those individuals to fines using an administrative process under its municipal code enforcement department.
In support of its position, the City relies upon City of Aventura. In that case, the Third District Court of Appeal held that Aventura’s red light camera ordinance was not preempted, either expressly or impliedly, by state law and did not conflict with but merely supplemented the state’s uniform traffic laws, stating that chapter 316 “creates traffic laws, which are applicable throughout the entire state, municipalities have the power to pass certain ordinances that regulate municipal traffic within their borders.” 89 So.3d at 237. The Third District Court further stated:
Here, the Ordinance is consistent, and does not conflict, with any provision found within the Uniform Traffic Control Law as mandated by section 316.007, Florida Statutes. Local authorities are explicitly granted the right to enact laws or ordinances within their home rule power, supplemental to existing state laws, to regulate, control, and monitor traffic movement. Because there is no provision in the Uniform Traffic Control Law that expressly preempts or conflicts with the Ordinance necessary to overcome the City’s exercise of its broad home rule powers, we find the Ordinance valid under Florida law.
Id. at 237.[5]
The City also cites Mendenhall v. Akron, 117 Ohio St.3d 33, 881 N.E.2d 255 *594 (Ohio 2008) and City of Davenport v. Seymour, 755 N.W.2d 533 (Iowa 2008), in support of its position, in which the Ohio and Iowa Supreme Courts rejected preemption challenges to local automated traffic enforcement ordinances finding them to be “supplementary” to state law.[6] The City also cites several cases that it considers to be instructive on the issue of preemption.
In response, Udowychenko contends that the ordinance is invalid because it intrudes, without express authorization, into an area that is “covered” by the Uniform Traffic Control Law. Udowychenko also contends that the ordinance conflicts with state law in at least eight areas; the ordinance 1) imposes vicarious liability; 2) makes signal violations an ordinance violation; 3) violates the requirement that a law enforcement officer observe the traffic signal infraction; 4) violates the requirement that proof of a violation be beyond a reasonable doubt; 5) evades the requirement that infractions be tried by judges or hearing officers; 6) violates the requirement that infractions be charged by a uniform traffic citation; 7) unlawfully diverts traffic signal related fines; and 8) imposes penalties that exceed those under state law.
In support of his position, Udowychenko cites two Attorney General opinions as persuasive. See State v. Family Bank of Hallandale, 623 So.2d 474, 478 (Fla.1993) (“Although an opinion of the Attorney General is not binding on a court, it is entitled to careful consideration and generally should be regarded as highly persuasive.”). In Opinion Attorney General Florida 2005-41, the Honorable Charlie Crist opined that the City of Pembroke Pines was authorized to enact a red light ordinance to monitor violations of traffic signals within the city and use photographs from cameras to advise vehicle owners that they had been recorded violating the traffic laws but was not authorized to issue traffic citations and penalize drivers who fail to obey red lights. In Opinion General Attorney Florida 97-06, the Honorable Robert Butterworth opined that while nothing precluded the use of unmanned cameras to record violations of section 316.075, a photograph of a vehicle violating traffic control laws may not be used as the basis for issuing a citation. Rather, independent observation or knowledge of the infraction by the officer issuing the citation was required.[7]
Udowychenko also cites State v. Kuhlman, 729 N.W.2d 577 (Minn.2007) (en banc), in which the Supreme Court of Minnesota invalidated a city ordinance that made the owner guilty of a petty misdemeanor if his or her vehicle was photographed running a red light. The court concluded that the ordinance conflicted with uniform statewide traffic regulations by penalizing the owner rather than the driver and by creating a rebuttable pre *595 sumption that the owner was the driver of the vehicle.
The Florida Constitution imparts home rule to municipalities, as Article VIII, section 2(b) provides that municipalities “may-exercise any power for municipal purposes except as otherwise provided by law.” However, section 166.021, Florida Statutes (2011), which codified Article VIII, limits that power where it states:
(1) As provided in s. 2(b), Art. VIII of the State Constitution, municipalities shall have the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal purposes, except when expressly prohibited by law.
[[Image here]]
(3) The Legislature recognizes that pursuant to the grant of power set forth in s. 2(b), Art. VIII of the State Constitution, the legislative body of each municipality has the power to enact legislation concerning any subject matter upon which the state Legislature may act, except:
[[Image here]]
(c) Any subject expressly preempted to state or county government by the constitution or by general law.
■ Chapter 316, the Florida Uniform Traffic Control Law, provides for uniform traffic laws throughout the state and that municipal ordinances are not to conflict with those laws. Section 316.002, entitled “Purpose,” provides in pertinent part that:
It is the legislative intent in the adoption of this chapter to make uniform traffic laws to apply throughout the state.... Section 316.008 enumerates the area within which municipalities may control certain traffic movement or parking in their respective jurisdictions. This section shall be supplemental to the other laws or ordinances of this chapter and not in conflict therewith. It is unlawful for any local authority to pass or to attempt to enforce any ordinance in conflict with the provisions of this chapter.
(Emphasis added). Section 316.007, Florida Statutes (2011), further emphasizes that traffic laws are.to be uniform throughout the state and provides, “[t]he provisions of this chapter shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein, and no local authority shall enact or enforce any ordinance on a matter covered by this chapter unless expressly authorized.” (emphasis added).
While, local governments have the authority to enact ordinances, they are prohibited from infringing on areas preempted by state law, and in this instance “covered” by the Uniform Traffic Laws of the State of Florida, or conflicting with state statute. . Florida law recognizes two types of preemption: express and implied. Sarasota Alliance for Fair Elections, Inc. v. Browning, 28 So.3d 880, 886 (Fla.2010). Express preemption requires a specific legislative statement; it cannot be implied or inferred. Id. Express preemption of a field by the Legislature must .be accomplished by clear language stating that intent. Id. Implied preemption exists when the legislative scheme is so pervasive the local ordinance would conflict with that pervasive regulatory scheme. Id.
The language in section 316.002 and section 316.007, where it specifically states the intent of the Legislature for uniformity of the traffic laws throughout the state prohibiting any local government from enacting or enforcing local laws covered by or in conflict with chapter 316, clearly indicates the Legislature’s intent to expressly preempt to the state the enforce *596 ment of traffic signal violations except for the limited local regulation allowed by the law.
In this instance, the City relied on section 316.008(l)(w) as authorizing its action to enact the ordinance, which provides:
§ 316.008. Powers of local authorities
(1) The provisions of this chapter shall not be deemed to prevent local authorities, with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power, from:
[[Image here]]
(w) Regulating, restricting, or monitoring traffic by security devices or personnel on public streets and highways, whether by public or private parties and providing for the construction and maintenance of such streets and highways.
Section 316.002 further states: “Section 316.008 enumerates the area within which municipalities may control certain traffic movement or parking....”
However, the City’s ordinance enforces traffic violations of a subject area that is covered and enforced by state law. This is the type of conduct that is expressly prohibited in the language of section 316.002 and section 316.008. According to section 316.075(l)(c)l., vehicular traffic “facing a steady red signal shall stop before entering the crosswalk on the near side of the intersection or, if none, then before entering the intersection and shall remain standing until a green indication is shown.” (emphasis added). Meanwhile, section 5.21 of the City’s ordinance describes a motor vehicle at an intersection “at which a steady red traffic control signal is displayed shall stop before entering the crosswalk on the near side of an intersection or, if none, than before entering the intersection, and shall remain stationary until a green indication is shown on the traffic control signal.” (emphasis added). It is clear that the City’s ordinance regulates identical conduct that is covered by chapter 316, Florida Statutes.[8] Accordingly, the City’s ordinance is contrary to section 166.021(3)(c) as it is expressly preempted by law.
Even assuming there was not express preemption from the enactment of this ordinance, there was implied preemption. The Florida Supreme Court has recognized that preemption is implied “when the ‘legislative scheme is so pervasive as to evidence an intent to preempt the particular area, and where strong public policy reasons exist for finding such an area to be preempted by the Legislature.’ ” Sarasota Alliance For Fair Elections, 28 So.3d at 886 (quoting Phantom of Brevard, Inc. v. Brevard Cnty., 3 So.3d 309, 314 (Fla. 2008)). Here the legislative scheme of enforcing traffic violations is pervasive; chapters 316 and 318 cover almost every area of traffic regulation and enforcement, encompassing 125 pages in the publication of the Florida Statutes.[9]
Effective July 1, 2010, the Legislature enacted the “Mark Wandall Traffic Safety Act”[10] within the Florida Uniform Traffic *597 Control Law, Chapter 2010-80, Laws of Florida, which included provisions in section 316.008 allowing a county or municipality to use “traffic infraction detectors” to “enforce s. 316.074(1) or s. 316.075(l)(c)l. when a driver fails to stop at a traffic signal on streets and highways under their jurisdiction under s. 316.0083.” The Act implemented a statewide red light enforcement program regulating the use of any traffic infraction detector[11] on state, county, and local municipal roads. City of Aventura, 89 So.3d at 241. Of significance here, the Act added the following provision:
§ 316.0076. Regulation and use of cameras
Regulation of the use of cameras for enforcing the provisions of this chapter is expressly preempted to the state. The regulation of the use of cameras for enforcing the provisions of this chapter is not required to comply with provisions of chapter 493.
The City argues this provision would have been unnecessary if chapter 316 had already preempted ordinances establishing a red light camera program. While the City is correct that courts should not assume that the Legislature acted pointlessly, see City of N. Miami v. Miami Herald Publ’g Co., 468 So.2d 218, 220 (Fla.1985), the Legislature may enact statutes to simply clarify that which previously existed. See, e.g., McKenzie Check Advance of Fla., LLC v. Betts, 928 So.2d 1204, 1210 (Fla.2006) (“Sometimes it may be appropriate to consider a subsequent amendment to clarify original legislative intent of a statute if such amendment was enacted soon after a controversy regarding the statute’s interpretation arose.”). Section 316.0076 appears to have merely clarified that the regulation of traffic has been preempted to the state.
In addition, a city cannot enact an ordinance that directly conflicts with a state statute. Phantom of Brevard, Inc., 3 So.3d at 314 (“[I]n a field where both the State and local government can legislate concurrently, a county cannot enact an ordinance that directly conflicts with a state statute”). Local ordinances are inferior to laws of the state and must not conflict with any controlling provision of a statute. Id. The test of conflict between a local government enactment and state law is whether to comply with one provision, a violation of the other is required. Id. In this instance, the statute is not silent as to the conduct regulated. It is the same conduct but enforced inconsistently.
As stated previously in this opinion, it is clear that the City’s ordinance enforces identical conduct that is covered by chapter 316. While section 316.075(l)(c)l. states that running a red light is a traffic violation, it further states in subsection (4) that it is a “noncriminal infraction.” Section 5.21 of the City’s ordinance cites the same conduct and, if a vehicle is recorded *598 running a red light, a “notice of infraction” is issued. As indicated supra, it is clear from the plain text that the ordinance mimics the language of the statute and enforces an area of law that is covered, within chapter 316. In this instance, the ordinance and section 816.075(l)(c) both penalize the same conduct-the failure to obey red light traffic signals. Further, according to this chapter, the punishment and fines are covered by chapter 318. Consequently, the City’s ordinance conflicts with state law.
Section 316.640(5)(a), Florida Statutes (2009), provides for the issuance of a traffic citation based upon personal observation of the commission of a traffic infraction.[12] Section 316.075, Florida Statutes (2011), requires adherence to traffic control signal devices by “drivers” of vehicles. Section 316.075(4) provides that a violation of this section is a noncriminal traffic infraction punishable pursuant to chapter 318. Section 318.14, Florida Statutes (2009) provides for civil penalties or, if the civil penalties were waived, a hearing before an official. The “official” means any judge authorized by law to preside over a court or hearing adjudicating traffic infractions. § 318.13(4), Fla. Stat. (2011). Section 318.14(6), Florida Statutes (2009) provides that the commission of a charged infraction at a hearing under this chapter must be proved beyond a reasonable doubt. Section 318.18(15), Florida Statutes (2009) provides for a $125 penalty for a violation of section 316.075(l)(c)l. when a driver failed to stop at a traffic signal, sixty dollars to be distributed as provided in section 318.21 [Disposition of civil penalties by county courts], and the remaining sixty-five dollars to be remitted to the Department of Revenue for deposit into the Administrative Trust Fund of the Department of Health. Section 318.121 prohibits the imposition of additional fees, fines, surcharges, or costs other than the court costs and surcharges assessed under section 318.18 from being added to the civil traffic penalties assessed in this chapter.
In contrast, the City’s ordinance provides for the issuance of a notice of infraction based solely on review of the recorded images by the City’s code enforcement officer. Orlando, Fla., Code of Ordinances tit. II § 5.22(b) (2012). Code enforcement officers include all code inspectors, fire inspectors, community service officers, designated park staff, and airport safety officers. § 5.11(1).[13] The ordinance holds *599 the owner, rather than the driver, at least initially responsible. § 5.22. The ordinance provides for a hearing before a hearing officer, who is an attorney appointed by the City Council to conduct appeals or other administrative hearings, and not before a judge or legislative hearing officer. § 5.20(b). The ordinance does not specify a standard of proof but presumably it is preponderance of the evidence and not proof beyond a reasonable doubt. The ordinance provides for a $125 fíne for the first two violations, increased to $250 for subsequent violations. § 5.26(a). According to the complaint, the fines are disbursed to the City and Lasercraft.
At a minimum, the ordinance conflicts with state law because it provides for a notice of violation based solely on recorded images and not on the personal observation of a law or traffic enforcement officer, provides that an individual appointed by the City Council who is not a judge determines the existence of the violation, allows for an adjudication based on proof less than beyond a reasonable doubt, imposes the penalty against the vehicle owner who may not have been the driver, imposes a fine different from that provided by state law, distributes the fines to the City and a private corporation and not as provided by state law, and imposes additional penalties not allowed by state law. Thus the trial court properly invalidated the ordinance based on preemption and conflict grounds. See, e.g., City of Palm Bay v. Wells Fargo Bank, N.A., 57 So.3d 226 (Fla. 5th DCA) (invalidating city ordinance, which granted city’s code enforcement liens priority over mortgages even when mortgages were recorded before liens, as conflicting with state statute codifying common law rule of “first in time, first in right”), review granted, 61 So.3d 410 (Fla.2011); see also Thomas v. State, 614 So.2d 468, 470 (Fla. 1993) (“While a municipality may provide a penalty less severe than that imposed by a state statute, an ordinance penalty may not exceed the penalty imposed by the state.”). But see City of Aventura, 89 So.3d at 240 (finding no conflict between state law and the procedure for contesting notices of violation set forth in the ordinance).
The conclusion that local enforcement of traffic signal violations by cameras are preempted by state law admittedly conflicts with City of Aventura. In that case, the majority concluded that the city’s red light camera program “falls squarely within the specific authority carved out in section 316.008(l)(w) by the Florida legislature.” City of Aventura, 89 So.3d at 239. However, the state’s authorization to municipalities to regulate traffic in section 316.008(l)(w) appears to contemplate only unique situations for which a statewide law is lacking or is inadequate. Here the Legislature has mandated that drivers stop at red light signals and has provided the mechanism to enforce that mandate. The imposition of separate and additional penalties for running a red light in a particular municipality does not fall ■within the specific authority of section 316.008(l)(w).
Accordingly, we affirm the judgment under review and certify conflict with City of Aventura.
AFFIRMED.
SAWAYA and TORPY, JJ., concur.

. No law enforcement officer observed the violation.

. Lasercraft is also alleged to have received a portion of the fines.

. This was initially a class action suit. Udowychenko’s motion to certify the class was denied. The court noted that only Udowychenko had filed an action to challenge the ordinance and that others who paid the fine most likely would be barred by the doctrine of voluntary payment.

. Lasercraft did not file its own briefs but joined in those submitted by the City.

. Judge Rothenberg dissented, concluding that Aventura’s ordinance to punish red light violations involved a matter already covered by chapter 316 and conflicted with chapters 316 and 318:
The City is essentially utilizing the state’s uniform traffic control devices (traffic lights), approved and regulated by the state for enforcement of the state’s uniform traffic control laws, to punish violators through the City's own enforcement program and to pocket the revenues it collects for its own benefit. This is exactly the sort of inconsistent application of traffic laws and traffic penalties the people and legislature of this state sought to preclude by abolishing all of the municipal courts and enacting a uniform statewide traffic control system.
While the Legislature granted municipalities the authority to regulate, restrict, or monitor traffic within their jurisdictions, the Legislature did not expressly grant municipalities the authority to enforce the same traffic infractions identified and already regulated in chapter 316 through their own "system of justice.” If that were the case, there would be no uniformity-only confusion.
Id. at 246.

. In Mendenhall, the Ohio Supreme Court concluded that the ordinance complemented rather than conflicted with state law because the ordinance provides that if a violation is both recorded by the automated system and observed by a police officer, then the criminal violation takes precedence. 117 Ohio St.3d 33, 881 N.E.2d 255 at 264. The City’s ordinance does not contain a similar provision. In City of Davenport, the Iowa Supreme Court recognized that, in contrast to its decision, the Colorado and Minnesota Supreme Courts have held that automated traffic enforcement regimes were preempted by state traffic laws. 755 N.W.2d at 544.

. Udowychenko also cites the House of Representatives Staff Analysis for the Mark Wan-dall Traffic Safety Act. The analysis noted that based on these Attorney General Opinions, the majority of local governments with red light programs use them solely for data collection or as a warning system to motorists.

. Further, this Court notes that section 316.075(l)(c)l.a. specifically authorizes municipal and county authorities to prohibit a right turn against a steady red signal at any intersection. However, it does not expressly authorize enforcement of running a red light.

. This is contrary to City of Aventura, 89 So.3d at 239 (finding no implied preemption because chapter 316 cannot be classified as being so pervasive that it completely occupies the field).

.The Act was named in honor of Mark Wandall, who was killed by a red-light runner when his wife was nine months pregnant. Melissa Wandall, The Real Reason for Red- *597 Light Cameras, Herald Trib., Sept. 6, 2011, available at http://www.heraldtribune.com/ article-/20110906/COLUMNIST/l 10909886 (last visited June 5, 2012).

. "Traffic infraction detector” is defined as:
A vehicle sensor installed to work in conjunction with a traffic control signal and a camera or cameras synchronized to automatically record two or more sequenced photographic or electronic images or streaming video of only the rear of a motor vehicle at the time the vehicle fails to stop behind the stop bar or clearly marked stop line when facing a traffic control signal steady red light. Any notification under s. 316.0083(l)(b) or traffic citation issued by the use of a traffic infraction detector must include a photograph or other recorded image showing both the license tag of the offending vehicle and the traffic control device being violated.
§ 316.003(87), Fla. Stat. (2011).

. Any sheriffs department or police department of a municipality may employ, as a traffic infraction enforcement officer, any individual who successfully completes instruction in traffic enforcement procedures and court presentation through the Selective Traffic Enforcement Program as approved by the Division of Criminal Justice Standards and Training of the Department of Law Enforcement, or through a similar program, but who does not necessarily otherwise meet the uniform minimum standards established by the Criminal Justice Standards and Training Commission for law enforcement officers or auxiliary law enforcement officers under s. 943.13. Any such traffic infraction enforcement officer who observes the commission of a traffic infraction or, in the case of a parking infraction, who observes an illegally parked vehicle may issue a traffic citation for the infraction when, based upon personal investigation, he or she has reasonable and probable grounds to believe that an offense has been committed which constitutes a noncriminal traffic infraction as defined in s. 318.14.
§ 316.640(5)(a), Fla. Stat. (2009).

. (1) For the purpose of this article, the City Council of the City of Orlando hereby designates all code inspectors, sworn law enforcement officers, vehicle for hire officers, fire inspectors, community service officers, designated park staff, airport safety officers, and parking control officers as “code enforcement officers” who shall have the power and au *599 thority to enforce the Codes and Ordinances of the City as set forth in this article.