IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

RICHARD EASTER, ON BEHALF OF
HIMSELF AND ALL OTHER PERSONS
SIMILARLY SITUATED,

       Appellant,

 v.                              Case No.  5D17-276

CITY OF ORLANDO,

       Appellee.

_____/

Opinion filed June 8, 2018

Non-Final Appeal from the Circuit Court
for Orange County,
Lisa T. Munyon, Judge.

David M. Kerner and Jason E. Weisser, of
Schuler, Halvorson, Weisser, Zoeller &
Overbeck, P.A., and Andrew A. Harris, of
Burlington & Rockenbach, P.A., West
Palm Beach, for Appellant.

Vincent Falcone III, David B. King, and
Thomas A. Zehnder, of King, Blackwell,
Zehnder & Wermuth, P.A., Orlando, for
Appellee.

Stephen F. Rosenthal, of Podhurst Orseck,
P.A., Miami, for Amicus Curiae Florida
Justice Association.

EVANDER, J.

In this class action suit seeking refunds for fines paid pursuant to an unconstitutional red-light camera ordinance, the class representative, Richard Easter, appeals a non-final order denying his motion to certify the class. We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(vi). In denying Easter's motion, the trial court found that Easter had failed to establish certain requirements for class certification—commonality, typicality, predominance, and superiority. The court's findings on these factors were based, in large part, on its determination that the voluntary payment defense applies to this case. The voluntary payment defense provides that "where one makes a payment of any sum under a claim of right with knowledge of the facts such a payment is voluntary and cannot be recovered." *City of Miami v. Keton*, 115 So. 2d 547, 551 (Fla. 1959). On appeal, Easter argues that the voluntary payment defense is inapplicable under the facts of this case and that the trial court erred in denying his motion to certify the class. We affirm.

**Procedural and Factual Background**

This case concerns an ordinance ("the Ordinance") adopted by the City of Orlando ("the City") that authorized the use of cameras to record vehicles that failed to properly stop at red lights. In addition to authorizing civil fines, the Ordinance authorized city-appointed hearing officers to assess administrative charges against a vehicle owner in the amount of the City's costs if the owner's appeal was denied.[1]

---

[1] The Ordinance also authorized a penalty for nonpayment of a fine, requiring the City to deny the vehicle owner the "right to obtain and maintain any city permits or licenses, including, but not limited to, occupational licenses (business tax receipts) and building permits until the civil fine and any assessed costs of appeal were paid in full."

2

The City issued 49,423 notices of infraction under the Ordinance. Of those vehicle owners who were issued citations, 35,851 paid the fines without appeal, while 378 filed notices of appeal. Most people who appealed raised factual challenges; less than ten percent raised legal challenges. Of those people whose appeals were not summarily granted, 174 attended a scheduled hearing, while 51 abandoned their appeals by paying their fines without a hearing.

In August 2009, Naveel Nasari filed a class action suit against the City and the company administering the program, seeking: (1) a declaration that the Ordinance was preempted by state law, (2) an injunction from further enforcement, and (3) class damages for various claims including unjust enrichment. Michael Udowychenko subsequently replaced Nasari as the class representative. The trial court later entered a final order determining that the Ordinance was invalid because it was preempted by state law and otherwise conflicted with state statutes. This Court affirmed the trial court's decision in *City of Orlando v. Udowychenko*, 98 So. 3d 589 (Fla. 5th DCA 2012). In doing so, we certified conflict with *City of Aventura v. Masone*, 89 So. 3d 233 (Fla. 3d DCA 2011), where our sister court upheld the validity of a similar red-light camera ordinance. In a footnote, we noted that Udowychenko's motion to certify the class had been denied:

> This was initially a class action suit. Udowychenko's motion to certify the class was denied. The court noted that only Udowychenko had filed an action to challenge the ordinance and that others who paid the fine most likely would be barred by the doctrine of voluntary payment.

However, the City did not list the denial of city licenses or permits as a nonpayment penalty in the notices of infraction, and it never imposed such penalties.

3

*Udowychenko*, 98 So. 3d at 592 n.3.  Because that denial was not challenged on appeal, we did not address it further.

In April 2010, the City sent Easter a notice of infraction of the Ordinance.  He filed a notice of appeal, arguing, in part, that the Ordinance was unlawful.  After a hearing officer upheld the infraction, Easter paid the fine.  Thereafter, Easter filed the instant class action suit against the City.  In November 2012, the parties filed a joint motion to stay proceedings pending resolution of the *Udowychenko* and *Masone* cases in the Florida Supreme Court.

The conflict between *Udowychenko* and *Masone* was resolved by the Florida Supreme Court in *Masone v. City of Aventura*, 147 So. 3d 492 (Fla. 2014).  There, in a 5-2 decision, the court held that both cities' ordinances were expressly preempted by state law.  After the resolution of *Udowychenko* and *Masone*, and after engaging in discovery, Easter filed his motion to certify class.  The trial court relied on the Florida Supreme Court's decision in *Keton* to conclude that the voluntary payment defense would be applicable in the instant case, stating, "[T]he Florida Supreme Court has long held that the doctrine applies when a local government imposes a fine later found preempted."

**Voluntary Payment Defense**

On appeal, Easter argues that it was error for the trial court to rely on the application of the voluntary payment defense in denying his motion for class certification. We disagree.

The voluntary payment defense has existed in Florida for over a century.  In 1887, the Florida Supreme Court noted that "money voluntarily paid upon claim of right, with full knowledge of all the facts, cannot be recovered back merely because the party, at the

4

time of payment, was ignorant, or mistook the law, as to his liability." *Jefferson Cty. v. Hawkins*, 2 So. 362, 365 (Fla. 1887). The court went on to state that the illegality of the demand for payment does not, by itself, provide grounds for relief. *Id.* Rather, there must also be a showing of "some compulsion or coercion attending its assertion which controls the conduct of the party making the payment." *Id.*

The Florida Supreme Court has reaffirmed the viability of the voluntary payment defense in later cases. *See, e.g., Keton*, 115 So. 2d at 551 ("The rule seems to be universal that where one makes a payment of any sum under a claim of right with knowledge of the facts such a payment is voluntary and cannot be recovered."); *Pacific Mut. Life Ins. Co. of Cal. v. McCaskill*, 170 So. 579, 582 (Fla. 1936) ("The general rule is that money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back on the ground that the claim was illegal, or that there was no liability to pay in the first instance.").

In *Keton*, Dade County adopted an ordinance pursuant to article VIII, section 11 of the Florida Constitution that "nullified all municipal ordinances attempting to regulate traffic." 115 So. 2d at 548. The City of Miami nevertheless continued to impose traffic fines under its ordinances. *Id.* at 549. Two classes of drivers challenged the fines: (1) drivers who were cited, tried, and convicted for infractions, and (2) drivers who paid fines without a hearing. *Id.* After determining that the ordinance was invalid based on the preemption doctrine, the court concluded that neither class could recover their previously paid fines. *Id.* at 551. In applying the voluntary payment defense to bar the class claims,

5

the court noted that there had been no showing that any of the payments "were made under protest." *Id.*[2]

In *City of Hollywood v. Miller*, 471 So. 2d 655 (Fla. 4th DCA 1985), our sister court referenced *Keton* in reversing a final summary judgment entered in a class action in favor of an individual challenging the procedural due process elements of a city parking ordinance. After concluding that the city's ordinance provided adequate due process for those contesting parking citations, the court noted that *Keton* would have nevertheless barred the plaintiff's claim for a refund of amounts already paid:

> Lastly, we note that even if [plaintiff] had been deprived of due process, under *City of Miami v. Keton*, 115 So. 2d 547 (Fla. 1959), he would be precluded on these facts from any recovery.

*Id.* at 656.

Subsequent to *Keton*, our court has recognized the continued viability of the voluntary payment defense. *See, e.g.*, *Chateau Cmtys., Inc. v. Ludtke*, 783 So. 2d 1227, 1231 (Fla. 5th DCA 2001) ("Equally individual are each tenant's claim of coercion and available defenses such as voluntary payment."); *Hall v. Humana Hosp. Daytona Beach*, 686 So. 2d 653, 658 (Fla. 5th DCA 1996) (holding that statute did not bar hospital from asserting voluntary payment defense). The purpose of the voluntary payment doctrine is to promote stability in transactions so that the entity receiving payment may rely upon payments without protest to use those funds in future activities, without fear of a claim of

---

[2] A showing that the payor made a legal protest is not required where the penalty for nonpayment "is so severe that it constitutes coercion and duress." *Broward Cty., Fla. Bd. of Cty. Comm'rs v. Burnstein*, 470 So. 2d 793, 795 (Fla. 4th DCA 1985). In the instant case, Easter has not argued that the penalties for nonpayment were so severe that they negated the protest requirement.

reimbursement by the payor. *Roadepot, LLC v. Home Depot, USA, Inc.*, 163 A.3d 513, 523 (R.I. 2017) (citing *Putnam v. Time Warner Cable of Se. Wis., Ltd. P'ship*, 649 N.W.2d 626, 633 (Wis. 2002)).

Easter argues that the trial court's reliance on the voluntary payment defense is "inconsistent with post-*Keton* Supreme Court precedent." He cites primarily to the Florida Supreme Court's decision in *Department of Revenue v. Kuhnlein*, 646 So. 2d 717 (Fla. 1994), where the court addressed the validity of a Florida Statute that imposed impact fees on cars purchased or titled in other states but subsequently registered in-state by Florida residents. After determining that the impact fee constituted an illegal tax, the court concluded that a full refund to those who had paid the impact fee was the appropriate remedy. *Id.* at 726. *Kuhnlein* is distinguishable from *Keton* because *Kuhnlein* involves the imposition of a tax, not a traffic fine. In Florida, the common law voluntary payment defense has been supplanted by statutes authorizing refunds for taxes paid in many situations. *See, e.g.*, § 197.182(1)(a), Fla. Stat. (2011) (authorizing Department of Revenue to order refunds if payment of taxes assessed on county's tax rolls "has been made voluntarily or involuntarily" in specified circumstances); § 215.26, Fla. Stat. (2011) (authorizing chief financial officer to refund certain monies paid into state treasury, including "overpayment of any tax, license, or account due" and "payment where no tax, license, or account is due"). Indeed, in *Department of Revenue v. Nemeth*, 733 So. 2d 970, 973 (Fla. 1999), the court stated that the *Kuhnlein* decision established "that in cases where the plaintiff is challenging the unconstitutionality of an *involuntarily paid tax* and

seeking a refund for the same the taxpayer need not comply with the 'administrative' requirements in section 215.26." (Emphasis added).[3]

Significantly, the *Kuhnlein* opinion did not reference *Keton* or the voluntary payment defense. The Florida Supreme Court has made clear that it does not overrule itself *sub silentio*:

> We take this opportunity to expressly state that this Court does not intentionally overrule itself sub silentio. Where a court encounters an express holding from this Court on a specific issue and a subsequent contrary dicta statement on the same specific issue, the court is to apply our express holding in the former decision until such time as this Court recedes from the express holding.

*Puryear v. State*, 810 So. 2d 901, 905 (Fla. 2002).

Accordingly, we agree with the trial court that *Keton* is controlling in the instant case and, thus, it was proper for the trial court to consider the application of the voluntary payment defense in determining whether to grant Easter's motion to certify the class.

**Class Certification**

A trial court's decision to grant or deny class certification is reviewed for an abuse of discretion. *Sosa v. Safeway Premium Fin. Co.*, 73 So. 3d 91, 102-03 (Fla. 2011). However, we examine a trial court's factual findings for competent, substantial evidence, and review conclusions of law de novo. *Discount Sleep of Ocala, LLC v. City of Ocala*, 43 Fla. L. Weekly D123, D124 (Fla. 5th DCA Jan. 5, 2018).

---

[3] The United States Supreme Court has noted that Florida has a "longstanding practice of permitting taxpayers to seek refunds under § 215.26 for taxes paid under an unconstitutional statute." *Newsweek, Inc. v. Fla. Dep't of Rev.*, 522 U.S. 442, 444 (1998).

Class actions in Florida are governed by Florida Rule of Civil Procedure 1.220. The class proponent has the burden to prove four prerequisites to class certification under rule 1.220(a):

> (1) the members of the class are so numerous that separate joinder of each member is impracticable, (2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class, (3) the claim or defense of the representative party is typical of the claim or defense of each member of the class, and (4) the representative party can fairly and adequately protect and represent the interests of each member of the class.

Fla. R. Civ. P. 1.220(a); *Terry L. Braun, P.A. v. Campbell*, 827 So. 2d 261, 265-66 (Fla. 5th DCA 2002). These four prerequisites are referred to as numerosity, commonality, typicality, and adequacy. *Terry L. Braun, P.A.*, 827 So. 2d at 266. In addition to satisfying the four prerequisites in rule 1.220(a), the class proponent must prove one of three requirements in subsection (b) of the rule. *Discount Sleep*, 43 Fla. L. Weekly at D126. Easter sought certification under subsection (b)(3), which requires that

> [q]uestions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class predominate over any question of law or fact affecting only individual members of the class, and class representation is superior to other available methods for the fair and efficient adjudication of the controversy.

Fla. R. Civ. P. 1.220(b)(3). These requirements are known as the predominance and superiority requirements. *Terry L. Braun, P.A.*, 827 So. 2d at 269. As the class proponent, Easter had the burden to establish each and every element required by rule 1.220. *Id.* A class action may be certified only after the trial court determines after "rigorous analysis" that the elements of the class action rules have been satisfied. *Id.* We

9

find no error in the trial court's determination that Easter failed to establish the commonality, typicality, predominance, and superiority elements.

Before addressing these elements individually, it is significant to note that Easter filed his motion to certify the class after the Florida Supreme Court had determined that the Ordinance was invalid. As a result, there was no longer an issue as to whether the City had improperly imposed fines against potential class members. It had. The primary issue became whether the City was required to refund monies paid, notwithstanding the fact that fines had been improperly imposed in the first place. The City's primary defense against a timely claim for refund would be the voluntary payment defense.

To establish the commonality requirement, the class proponent must establish that its claim or defense "raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class." Fla. R. Civ. P. 1.220(a). The primary concern in a consideration of commonality is whether the representative's claim arises from the same practice or course of conduct that gave rise to the remaining claims and whether the claims are based on the same legal theory. *Sosa*, 73 So. 3d at 107. However, the court may also consider the application of defenses in analyzing the commonality element. *Id.* at 109. Here, because the issue of whether the City improperly assessed fines under the Ordinance has been resolved, the trial court would be called upon to determine whether each class member's claim was precluded by the voluntary payment defense. In considering the application of the voluntary payment defense, Easter's course of conduct was significantly different than that of virtually all other members of the proposed class. Specifically, Easter paid his fine under protest after raising a legal challenge to the validity of the Ordinance. As a result, the trial court could

properly conclude that the questions of law or fact that would need to be addressed on Easter's claim are not common to the questions of law or fact that would need to be addressed on the claims of other proposed class members.

To establish the typicality requirement, the class proponent must establish that its claim or defense is typical of the claim or defense of each member of the class. Fla. R. Civ. P. 1.220(a). Although the focus is usually whether the class representative has the same legal interest and has endured the same legal injury as the class members, *Sosa*, 73 So. 3d at 114-15, courts may consider the applicability of defenses in determining typicality. *See Wyeth, Inc. v. Gottlieb*, 930 So. 2d 635, 643 (Fla. 3d DCA 2006) ("Since factual differences among the class members' claims and the defenses which Wyeth can assert vary depending on each plaintiff's individual circumstances and conditions, Ms. Gottlieb's claims are not typical of the class."); *Seminole Cty. v. Tivoli Orlando Assocs. Ltd.*, 920 So. 2d 818, 823 (Fla. 5th DCA 2006) (holding plaintiff failed to satisfy typicality requirement where it presented no evidence and complaint alleged plaintiff "was the only developer described in the claim, the only developer to pay under protest, and the only developer to challenge the fees"); *Mathieson v. Gen. Motors Corp.*, 529 So. 2d 761, 762 (Fla. 3d DCA 1988) ("A claim is not representative where the defenses of each plaintiff would be dependent on different facts and circumstances."). Easter made significant efforts to contest his fine, prior to eventually making payment under protest. By contrast, most of the proposed class members simply paid the fine. Accordingly, the trial court could properly conclude that Easter's claim was not typical of the claims of the other class members.

11

To establish the predominance element, the class proponent must establish that "the questions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class predominate over any question of law or fact affecting only individual members of the class." Fla. R. Civ. P. 1.220(b)(3). The Florida Supreme Court has observed that the determination of whether a party has shown actual compulsion or coercion sufficient to overcome the voluntary payment defense normally requires an individualized, fact-intensive inquiry. *See Pacific Mut. Life Ins. Co. of Cal.*, 170 So. at 583 (stating that because of difficulty in setting forth a definite and exact rule of universal application to determine whether a payment is voluntary or involuntary, each case "must depend somewhat upon its own peculiar facts"); *see also Chateau Cmtys., Inc.*, 783 So. 2d at 1231 (reversing certification of class members where plaintiff's claims, as pled, were not suitable for class action; stating "[e]qually individual are each tenant's claim of coercion and available defenses such as voluntary payment").

Here, the application of the voluntary payment defense doctrine supports the trial court's conclusion that Easter failed to prove the predominance element. In discussing predominance, the trial judge noted that even if those proposed class members who "objected to their fines but did not seek judicial relief" were not immediately barred, overcoming the voluntary payment defense would require a "highly individualized" determination regarding the nature of the objection, the extent to which each person pursued the objection, and whether the potential penalties compelled or coerced payment from that person. Thus, the trial court could properly conclude that in determining whether the City was required to pay refunds to potential claimants, individual issues would predominate over common issues.

12

To establish the superiority requirement, the class proponent must establish that class representation "is superior to other available methods for the fair and efficient adjudication of the controversy." Fla. R. Civ. P. 1.220(b)(3). In affirming the trial court's conclusion that Easter failed to establish the superiority element, we find it appropriate to quote from Judge Frederick Lauten's order denying the motion to certify class in the *Udowychenko* case:

> If Plaintiff's putative class is certified, all drivers cited under the Ordinance would be included in the class and be entitled to class notice, a time consuming and expensive proposition. Only later, after unnecessary consumption of party and judicial resources, would the other members of the class very likely be told that, pursuant to binding Florida Supreme Court precedent in *Keaton* [sic], they are unable to recover the fines they paid because of the voluntary payment defense. Surely the law does not require such a pointless, time-consuming and fruitless action. In some ways, there is a certain cruelty to Plaintiff's argument when he asserts that the Court should ignore the voluntary payment doctrine, certify the class with the attendant effect of raising hopes that notified class members only to later announce to them that they voluntarily paid their fines and are not equally entitled to relief.

AFFIRMED.

BERGER and EDWARDS, JJ., concur.

13