CORTIÑAS, J.
The City of Aventura (the “City”) seeks review of the trial court’s ruling that section 48-26 of the City’s Code of Ordinances, allowing the use of image capture technologies for monitoring and enforcing laws relating to traffic control signals, is invalid and unenforceable. We reverse.
The City is a municipal corporation organized and existing under the laws of the State of Florida, and located in Miami-Dade County, Florida. On October 18, 2007, the City enacted Ordinance 2007-5, inclusive of section 48-26, which in pertinent part, authorized the City to use a monitoring system consisting of cameras at traffic lights to capture and record im *235 ages of drivers who fail to stop at red lights (“red light infraction”), and issue notices of violation for such red light infractions after the images are reviewed for accuracy by a traffic control review officer appointed by the City. See Aventura, Fla., City Code, ch. 48, art. 3 & ch. 2, art. 5, § 2-348(b) (2007).
After allegedly failing to stop at an intersection monitored by automated cameras, Richard Masone (“Masone”) was issued two (2) violation notices on January 9, 2009, and January 12, 2009, respectively. Masone filed a complaint for declaratory relief, contending that the two violation notices were invalid exercises of municipal authority, and seeking that 1) the Ordinance be declared invalid, 2) the Ordinance be declared invalid to the extent it applies to red light violations, and 3) that any municipal traffic citations issued under the Ordinance be declared to be of no legal effect.[2] Specifically, Masone argued that, in enacting the Ordinance, the City has legislated on a subject reserved exclusively for the Florida Legislature and, as such, the Ordinance is invalid because it is preempted by, and directly conflicts with, Florida law. In defending the Ordinance, the City asserted that, by adopting Chapter 316, Florida Statutes, the Legislature expressly authorized municipalities to supplement existing statewide traffic control laws by granting local municipal governments the right to regulate traffic on roadways throughout their respective boundaries through security devices such as the red light camera system adopted in the Ordinance. Further, the City argued that any penalties imposed were deemed noncriminal, non-moving violations for which a civil penalty was assessed, as authorized by the Florida Legislature for code infractions.
Ultimately, the trial court granted Ma-sone’s motion for summary judgment, reasoning that section 48-26 was an invalid exercise of municipal power without express authority from the Florida Legislature allowing the City to legislate the subject. Specifically, the trial court stated that “the problem exists with the provision of Section 48-26 which allows such cameras to be used as the sole basis for issuing citations against drivers who disobey an official traffic device.... Section 316.640(5)(a), Florida Statutes, requires that citations be issued when an officer ‘observes the commission of a traffic infraction.’ ” Based upon these reasons, the trial court concluded that section 48-26 is in direct conflict with section 316.007, Florida Statutes. We disagree.
It is well established that Florida law grants municipalities broad home rule and police powers. The Florida Constitution provides for such municipal powers, by stating that
Municipalities shall have governmental, corporate and propriety powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law.
Art. VIII, § 2(b), Fla. Const. This principle of broad municipal home rule powers is codified in chapter 166, Florida Statutes. For example, section 166.021(3)(c), Florida Statutes states:
The Legislature recognizes that pursuant to the grant of power set forth in s. 2(b), Art. VIII of the State Constitution, *236 the legislative body of each municipality has the power to enact legislation concerning any subject matter upon which the state Legislature may act, except:
(c) Any subject expressly preempted to the state or county government by the constitution or by general law....
§ 166.021(3)(c), Fla. Stat. (2008). The plain language therefore grants a municipal government the authority, under broad home rule powers, to enact local ordinances, which are not inconsistent with general law.
In furtherance of a municipal government’s broad home rule powers, “[a] regularly enacted ordinance will be presumed to be valid until the contrary is shown, and a party who seeks to overthrow such an ordinance has the burden of establishing its invalidity.” Lowe v. Broward Cnty., 766 So.2d 1199, 1203 (Fla. 4th DCA 2000) (quoting State ex rel. Office Realty Co. v. Ehinger, 46 So.2d 601, 602 (Fla.1950)). Also, it is clear that “[wjhere there is no direct conflict between the two, appellate courts should indulge every reasonable presumption in favor of an ordinance’s constitutionality.” City of Kissimmee v. Fla. Retail Fed’n Inc., 915 So.2d 205, 209 (citation omitted.); see also Lowe, 766 So.2d at 1203 (“An appellate court will ‘indulge every reasonable presumption in favor of an ordinance’s constitutionality.’ ”) (quoting City of Pompano Beach v. Capalbo, 455 So.2d 468, 469 (Fla. 4th DCA 1984)).
Florida’s Uniform Traffic Control Law, embodied in chapter 316, Florida Statutes, provides for uniform traffic laws throughout the state, counties, and local municipalities. §§ 316.001, 316.002, Fla. Stat. (2008). Entitled “Provisions uniform throughout state,” section 316.007, Florida Statutes, provides, in pertinent part, that
[tjhe provisions of this chapter shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein, and no local authority shall enact or enforce any ordinance on a matter covered by this chapter unless expressly authorized.
§ 316.007, Fla. Stat. (2008). Notably, however, the Uniform Traffic Control Law also expressly recognizes the power of municipalities to pass traffic ordinances for the regulation of municipal traffic in their respective jurisdictions. § 316.002, Fla. Stat. (2008). Enumerating certain “powers of local authorities,” section 316.008, Florida Statutes, specifies that:
(1) The provisions of this chapter shall not be deemed to prevent local authorities, with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power, from:
(a) Regulating or prohibiting stopping, standing, or parking.
(b) Regulating traffic by means of police officers or official traffic control devices.
(w) Regulating, restricting, or monitoring traffic by security devices or personnel on public streets and highways, whether by public or private parties and providing for the construction and maintenance of such streets and highways.
§ 316.008, Fla. Stat. (2008).
Thus, the plain text of the Uniform Traffic Control Law expressly confers authority to a municipal government to regulate traffic within its municipal boundaries as a reasonable exercise of its police power where such regulation does not conflict, but supplements the laws found therein. See §§ 316.002, 316.008(l)(w), Fla. Stat. (2008). Here, the Ordinance was enacted by the City, under its broad home rule powers in response to *237 concerns that drivers at dangerous intersections within the municipal boundaries were failing to heed existing traffic control signals, resulting in a high incidence of serious, life-threatening accidents. As set forth in section 316.002, “[t]he Legislature recognizes that there are conditions which require municipalities to pass certain other traffic ordinances in regulation of municipal traffic that are not required to regulate the movement of traffic outside of such municipalities.” § 316.002, Fla. Stat. While chapter 316 creates traffic laws which are applicable throughout the entire state, municipalities have the power to pass certain ordinances that regulate municipal traffic within their borders. The City is in a unique position to identify dangerous intersections within its boundaries and implement additional safeguards to prevent accidents at such intersections. Accordingly, the City’s enactment of the Ordinance to regulate traffic through the use of cameras was a proper exercise of the granted authority to regulate, control, and monitor traffic movement.[3]
The trial court found that the Ordinance conflicts with the Uniform Traffic Control Law. In order for this Court to find that there is conflict between the Uniform Traffic Control Law, and the Ordinance, both “must contradict each other in the sense that both the legislative provisions (the ordinance and the statute) cannot co-exist.” F.Y.I. Adventures, Inc. v. City of Ocala, 698 So.2d 583, 584 (Fla. 5th DCA 1997). In other words, “[t]hey are in ‘conflict’ if, in order to comply with one, a violation of the other is required.” Id. Because municipalities enjoy broad home rule powers, the regulation of vehicular traffic is a well-established legitimate exercise of municipal police power. See City of Miami v. Aronovitz, 114 So.2d 784, 788 (Fla.1959) (“Giving recognition to our established judicial viewpoint that an automobile is a dangerous instrumentality, we must concluded [sic] that any procedure lawfully directed toward the effective prevention of the negligent operation of the automobile and the imposition of requirements of competency on the part of the driver thereof, should meet with judicial approbation.”).
Here, the Ordinance is consistent, and does not conflict, with any provision found within the Uniform Traffic Control Law as mandated by section 316.007, Florida Statutes. Local authorities are explicitly granted the right to enact laws or ordinances within their home rule power, supplemental to existing state laws, to regulate, control, and monitor traffic movement. Because there is no provision in the Uniform Traffic Control Law that expressly preempts or conflicts with the Ordinance necessary to overcome the City’s exercise of its broad home rule powers, we find the Ordinance valid under Florida law.
The trial court found that the Ordinance was in conflict with section 316.640(5)(a), Florida Statutes, in so far as the subsection “requires that citations be issued when an officer ‘observes the commission of a traffic infraction.’ ” However, upon complete review, we find that section 316.640(5)(a), Florida Statutes, is applicable only to “traffic infraction enforcement officers” as employed by a municipality to issue citations for traffic or parking infractions under the Uniform Traffic Control Law. In whole, the subsection provides:
(5)(a) Any sheriffs department or police department of a municipality may employ, as a traffic infraction enforce *238 ment officer, any individual who successfully completes instruction in traffic enforcement procedures and court presentation through the Selective Traffic Enforcement Program as approved by the Division of Criminal Justice Standards and Training of the Department of Law Enforcement, or through a similar program, but who does not necessarily otherwise meet the uniform minimum standards established by the Criminal Justice Standards and Training Commission for law enforcement officers or auxiliary law enforcement officers under s. 943.13. Any such traffic infraction enforcement officer who observes the commission of a traffic infraction or, in the case of a parking infraction, who observes an illegally parked vehicle may issue a traffic citation for the infraction when, based upon personal investigation, he or she has reasonable and probáble grounds to believe that an offense has been committed which constitutes a noncriminal traffic infraction as defined in s. 318.14.
§ 316.640(5)(a), Fla. Stat. (2008). The plain language mandates that a traffic infraction enforcement officer may issue a traffic citation after the observation of the commission of either a traffic or parking infraction for which he or she has reasonable and probable grounds to believe that a noncriminal traffic infraction was committed under section 318.14, Florida Statutes. Thus, the subsection is limited in scope to specific traffic infraction enforcement officers operating solely under the Uniform Traffic Control Law.
In contrast, the Ordinance allows for a traffic control infraction review officer, who although sharing the qualifications of the type of officer referenced in section 316.640(5)(a), is instead appointed by the City pursuant to the Ordinance and for the distinct purposes of viewing recorded images and issuing corresponding citations in accordance with the Ordinance. Essentially, the Ordinance supplements law enforcement personnel in the enforcement of red light infractions, by issuing a notice of violation under the City’s Code of Ordinances, deemed a non-criminal, non-moving violation, for which a civil penalty shall be assessed. The Ordinance does not prohibit law enforcement officers from issuing a citation in accordance with the Uniform Traffic Control Law, nor does it “supersede, infringe, curtail or impinge upon state or county laws related to red light signal violations.” Aventura, Fla., City Code, ch. 48, art. 3 § 48-26 (2007). Rather, the Ordinance’s utilization of image capture technologies is meant to serve as an ancillary deterrent to red light infractions. Id.
Furthermore, while section 48-26 allows the City to utilize cameras under the Ordinance, all alleged red light infractions are recorded and reviewed by a Traffic Control Infraction Review Officer, who verifies the accuracy of the recording before issuing a notice of violation.[4] See Aventura, Fla., City Code, ch. 48, art. 3 §§ 48-26, 48-27, 48-29, 48-31. The Ordinance mandates that the Traffic Control Infraction Review Officer review and verify the recorded images prior to the issuance of a notice of violation which parallels the requirement that a traffic infraction enforcement officer under the Uniform Traffic Control Law observe the traffic violation and, does not conflict with the requirements of subsection 316.640(5)(a), *239 Florida Statutes. Accordingly, we find the trial court erred in its determination that section 48-26 allowed the cameras to serve as the sole basis for issuing a notice of violation in direct conflict with section 316.007, Florida Statutes.
Contrary to our dissenting colleague’s assertions, the Ordinance is also not preempted, either expressly or impliedly, by state law. The dissent points to the language of sections 316.002 and 316.007 as being demonstrative of state preemption. More specifically, the dissent highlights the language in section 316.002, which makes it “unlawful for a local authority to pass or to attempt to enforce any ordinance in conflict with the provisions of this chapter.” Section 316.007 provides:
The provisions of this chapter shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein, and no local authority shall enact or enforce any ordinance on a matter covered by this chapter unless expressly authorized. However, this section shall not prevent any local authority from enacting an ordinance when such enactment is necessary to vest jurisdiction of violation of this chapter in the local court.
§ 316.007, Fla. Stat. (emphasis added).
In order “[t]o find a subject matter expressly preempted to the state, the express preemption language must be a specific statement; express preemption cannot be implied or inferred.” Hillsborough Cnty. v. Fla. Restaurant Ass’n, 603 So.2d 587, 590 (Fla. 2d DCA 1992) (citing Bd. of Trs. v. Dulje, 453 So.2d 177 (Fla. 2d DCA 1984)). Neither the language in section 316.002 nor section 316.007 demonstrates express preemption by the state. Determining implied preemption requires that the “legislative scheme must be so pervasive that it completely occupies the field, thereby requiring a finding that an ordinance which attempts to intrude upon that field is null and void.” Id. at 591 (citing Tribune Co. v. Cannella, 458 So.2d 1075, 1077 (Fla.1984)); (see also Phantom of Clearwater, Inc. v. Pinellas Cnty., 894 So.2d 1011, 1019) (Fla. 2d DCA 2005) (“[Cjourts imply preemption only when ‘the legislative scheme is so pervasive as to evidence an intent to preempt the particular area, and where strong public policy reasons exist for finding such an area to be preempted by the Legislature.’ ”) (quoting Tallahassee Mem’l Reg’l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc., 681 So.2d 826, 831 (Fla. 1st DCA 1996)). Chapter 316 cannot be classified as being “so pervasive that it completely occupies the field.” On the contrary, section 316.008 specifies that no provision of chapter 316 prevents local authorities, within the reasonable exercise of their police power from “[rjegulating, restricting, or monitoring traffic by security devices.” § 316.008(l)(w), Fla. Stat. This is precisely what the City has done. The City, via image capture technologies, monitors intersections it has determined to be of particular concern for traffic accidents, and regulates and restricts red light infractions at those intersections through the issuance of its notices of violation. Doing so is well within the City’s exercise of its broad home rule power and falls squarely within the specific authority carved out in section 316.008(l)(w) by the Florida legislature.
Moreover, a complete examination of the exceptions carved ' out under section 316.008 demonstrates that local authorities, such as the City, in accordance with their home rule powers are not prevented from
(h) Regulating the operation of bicycles.
*240 (i) Regulating or prohibiting the turning of vehicles or specified types of vehicles.
(r) Regulating pedestrian crossings at unmarked crosswalks.
(s) Regulating persons upon skates, coasters, and other toy vehicles.
§ 316.008(l)(h)-(i), (r)-(s). A local authority can accomplish these regulations through duly enacted ordinances such as the one at issue. Section 316.008 allows the local authorities to use their home rule powers to effectuate certain restrictions and regulations but does not specify the means or the schemes for implementing such restrictions or regulations. Through the Ordinance, the City has simply developed a procedure for carrying out its power to regulate, restrict or monitor traffic.
The dissent also states that when a notice of violation is contested, “a quasi-judicial adjudication on the merits is made by a procedure established by the City in violation of article V of the Florida Constitution and chapters 316 and 318 of the Florida Statutes.” It is undisputed that the City has broad home rule powers as set forth in section 166.021, Florida Statutes and Article VIII, section 2(b) of the Florida Constitution. Consistent with these broad powers, the City’s Code provides for the appointment of Special Masters and further provides that a person served with a notice of a violation of the City’s Code may request an administrative hearing for purposes of appeal. See Aven-tura, Fla., City Code, ch. 2, art. V §§ 2-334, 2-335, 2-341. The City is not creating a new “court” to address red light infractions under its Code, but is instead simply utilizing an already existing mechanism, consistent with its home rule powers, to resolve issues arising from notices of code violations. The Ordinance specifies that
Notices of infractions issued pursuant to this article shall be addressed using the [Cjity’s own Special Masters pursuant to Article V, Chapter 2 of the City Code and not through uniform traffic citations or county courts. This shall not bar the use of uniform traffic citations and the country courts when city police personnel decide not to rely on this article as the enforcement mechanism for a specific violation.
Aventura, Fla., City Code, ch. 48, art. 3 § 48-26 (2007). Contrary to the dissent’s assertion, even though the matter is initially appealed before a Special Master, “[a]n aggrieved party, including the City, may appeal a final order of a Special Master to the circuit court.” Aventura, Fla., City Code, ch. 2, art. V § 2-345. Florida courts routinely address cases involving appeals to the circuit court from the decisions of special masters or hearing officers as to local government code violations, and, in doing so, recognize the use of such administrative mechanisms for the resolution of code violations. See Hardin v. Monroe Cnty., 64 So.3d 707, 709-10 (Fla. 3d DCA 2011); City of Palm Bay v. Palm Bay Greens, LLC, 969 So.2d 1187 (Fla. 5th DCA 2007); Miami-Dade Cnty. v. Brown, 814 So.2d 518 (Fla. 3d DCA 2002). We find no distinction between the administrative resolution mechanisms in such cases and in the City utilizing a Special Master, under the facts of this case, to resolve initial disputes of notices of violation. We, therefore, find no conflict between state law and the procedure for contesting notices of violation set forth in the Ordinance.
We also note the Florida Legislature’s recent enactment of the “Mark Wandall Traffic Safety Act” (the “Act”) within the Uniform Traffic Control Law. Laws of Fla., ch. 2010-80, §§ 6 & 7 (2010). The Act implements a statewide red light signal enforcement scheme regulating the use *241 of any traffic infraction detector on state, county, and local municipal roads. The plain language makes clear the Legislature is aware of municipal programs like the Ordinance, and in turn, has created a statutory scheme for statewide regulation which in no way invalidates such existing programs.[5] Importantly, the Act does not invalidate existing municipal traffic monitoring systems, such as red light cameras, but now expressly regulates any such programs and thus, now expressly preempts municipal regulation under the Uniform Traffic Control Law to conform to adopted specifications of the Department of Transportation. Id.[6]
Based upon the foregoing, we find the trial court erred in determining section 48-26 of the Ordinance invalid and unenforceable and, accordingly, we reverse.
Reversed and remanded.
SCHWARTZ, Senior Judge, concurs.

. Masone argues that he filed a declaratory action because he had no adequate remedy at law and the sole defensive option provided under the Ordinance is a hearing before a special master, who does not have authority to make pronouncements regarding the validity of municipal ordinances under state law.

. The Ordinance specifically states: "This section shall not supersede, infringe, curtail or impinge upon state or county laws related to red light signal violations or conflict with such laws."

. More specifically, "[t]he City's Chief of Police shall designate a Traffic Control Infraction Review Officer, who shall be a police officer of the City or who shall meet the qualifications set forth in section 316.640(5)(A), or any other relevant statute.” Aventura, Fla., City Code, ch. 48, art. 3 § 48-31(B).

. For example, section 316.07456, Florida Statutes, provides that any traffic infraction detector
[ajcquired by purchase, lease, or other arrangement entered into by a county or municipality on or before July 1, 2011, or equipment used to enforce an ordinance enacted by a county or municipality on or before July 1, 2011, is not required to need the specifications established by the Department of Transportation until July 1, 2011.
Laws of Fla., ch. 2010-80, § 7 (2010).

. Although the City has since amended the Ordinance to comply with the language of the Act, the amendment of the Ordinance does not affect our decision and our holding is limited to those cases involving notices of violation issued prior to the amendment of the Ordinance.